# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

TASHA CHAPMAN,
     Plaintiff,

     vs

FRANKLIN COUNTY SHERIFF, *et al.*,
     Defendants.

Case No. 2:22-cv-2524

Watson, J.
Litkovitz, M.J.

**ORDER AND REPORT
AND RECOMMENDATION**

Plaintiff, a resident of Columbus, Ohio, has filed a pro se civil rights complaint pursuant to 42 U.S.C. § 1983.   (Doc. 1-1).   Plaintiff brings claims arising out of her pretrial detention at the Franklin County Correctional Center II (also known as the Jackson Pike Correction Center II or JPCC II).   Plaintiff names as defendants the Franklin County Sheriff, the Franklin County Correctional Center II, and "John or Jane Doe (OWNER(S) of Jackson Pike Correction Center II.)"   (*Id.* at PAGEID 4).   By separate Order, plaintiff has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.

This matter is now before the Court for a *sua sponte* review of the complaint to determine whether the complaint or any portion of it should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief.   *See* Prison Litigation Reform Act of 1995 § 804, 28 U.S.C. § 1915(e)(2)(B).

## Screening of Complaint

### A.    Legal Standard

In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits."   *Denton*

*v. Hernandez,* 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 324 (1989)).

To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if they are satisfied that the action is frivolous or malicious. *Id.*; *see also* 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams,* 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke,* 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton,* 504 U.S. at 32; *Lawler,* 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke,* 490 U.S. at 328).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915 (e)(2)(B)(ii) and 1915A(b)(1). A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). By the same token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470-71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to

2

state a claim" under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

## B.    Plaintiff's Complaint

Plaintiff alleges that on March 25, 2022, she was arrested and taken to Jackson Pike Correction Center II on a charge of vandalism. When plaintiff was checked in as an inmate, she was told that hijabs (religious head wraps) were not allowed and that she would have to be stripped of her hijab. Plaintiff alleges she suffers from Bipolar Disorder II, and experienced shock and fear at learning this. As a result, she began to have a panic attack and anxiety. Plaintiff was advised by numerous guards that the wearing of a hijab was prohibited. She was given a temporary accommodation and permitted to use a bedsheet as a head covering. However, a guard subsequently advised plaintiff that she had to remove the hijab for booking.

Fearing punishment for exercising her religious beliefs, plaintiff complied.

When she arrived at the booking area, another guard advised her that "hijabs were not allowed at JPCC" and that it was a mistake to previously give plaintiff a bedsheet to wear. Plaintiff asked to speak to Sgt. Nealy, who advised her she could only wear a hijab in her bed area. Nealy advised plaintiff that she could use her sheet or towel when she was in her bed area only. Sgt. Nealy then "quoted some fake law" in support of the hijab ban. Plaintiff was wearing the makeshift hijab when Nealy ordered her to remove it. Plaintiff refused, and the hijab was physically removed from plaintiff by a female and male guard.

Plaintiff was then escorted to her housing unit without her hijab in front of "everybody." (Doc. 1-1 at PAGEID 6). Once she arrived at the unit, plaintiff attempted to use her shirt, which was pulled up over her head, as a head covering. One guard advised the inmates in the holding cell that no one could leave the cell until plaintiff removed her head covering. She was later transported to her permanent holding cell.

Plaintiff was housed with 15 other women in her holding cell. She was forced to use her bedsheet as a hijab, which meant she had no sheet to cover the dirty mattress. Plaintiff then requested medication from a female guard, who advised plaintiff she could not use her sheet as a hijab and had to remove it before going to the TV or eating area. Plaintiff advised the guard she would not remove her head covering, and the guard closed the door without responding to plaintiff's request for medication.

Another guard advised plaintiff that she would need to get permission from the jail chaplain to wear a hijab. Plaintiff requested to speak to the chaplain but was denied.

Plaintiff alleges a guard retaliated against the entire housing unit when plaintiff refused

to remove her hijab by cutting off the phones and television for all 15 inmates in the unit. Plaintiff alleges she was placed overnight in a dorm with women who were drug addicts and detoxing.   She alleges there were food trays and used feminine hygiene products on the floor, and she was placed in that unit as punishment for wearing a hijab and for practicing her religion.

She was then moved to another unit and harassed daily by the guards about her hijab. She alleges the guards continued to threaten her and the other inmates if plaintiff continued to wear her sheet as a head covering, which caused discontent among the other inmates.

The complaint alleges that on March 27 and April 1, 2022, plaintiff observed Christian women being taken out of the unit for religious services.

Plaintiff alleges she was denied medical and mental health treatment for her Bipolar Disorder II for the seven days she was incarcerated.   One guard gave her a form to seek medical attention but no pen to complete the form.   She obtained a pen from another inmate and placed her mental health request at the door.   However, she did not receive any mental health treatment.

Plaintiff alleges that on April 1, 2022, she was repeatedly advised by different guards that she would not be permitted to wear a hijab to her court hearing.   She feared she would be charged with another crime if she wore a head covering to court, so she did not wear a hijab to court.   Plaintiff alleges she "was paraded in front of about 30 male inmates and about 8 male guards in court without my hijab.   I was certainly mortified and humiliated."   (*Id*. at PAGEID 9) (emphasis omitted).

Plaintiff also alleges:

5

> JPCC also violated my free practice of religion specifically by hiring male guards specifically to work at JPCC in the women's dorm at night when women take off their clothes to sleep.   Specifically on the night of March 30th, 2022 and morning of March 31, 2022 guards 9, 10 and 11 were male officers (white and black) who worked the shift and who specifically came into the women's dormitory area while women w[]ere undressed, perhaps using the toilet and sleeping without their day clothing and or in their underwear.   Since [I] was unable to sleep I was sitting up in the day room.   At one point these male guards came in twice in a 10 minute period to do a count.

(*Id*. at PAGEID 10) (emphasis omitted).

Plaintiff was released on her own recognizance after her April 1, 2022 court hearing and given back her hijab.

Plaintiff alleges violations of her rights under the United States Constitution, Religious Land Use and Institutionalized Persons Act (RLUIPA), and the Americans with Disabilities Act; housing discrimination under Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601 *et seq*. and 42 U.S.C. § 3631; and intentional infliction of emotional distress.   (Doc. 1-1 at PAGEID 10-11).   Plaintiff seeks $50,000,000.00 as relief.

### C.   Resolution

At this stage in the proceedings, without the benefit of briefing by the parties to this action and construing plaintiff's pro se complaint liberally, the undersigned concludes that the complaint is deserving of further development and may proceed at this juncture against defendant Franklin County Sheriff in his official capacity.   Liberally construed, the complaint alleges a policy or practice of denying Muslim inmates the right to practice their religion by prohibiting the wearing of a hijab.   However, plaintiff's complaint in all other respects should be dismissed.

Plaintiff's complaint against the Franklin County Correctional Center, II is subject to

6

dismissal because the jail is not a "person" or legal entity that can be sued under 42 U.S.C. §

1983.  *See Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir. June 26, 2002) ("The McCracken

County Jail is not a legal entity susceptible to suit.") (citing *Matthews v. Jones*, 35 F.3d 1046,

1049 (6th Cir. 1994)); *Marbry v. Corr. Medical Servs.,* 238 F.3d 422 (Table), 2000 WL

1720959, at *2 (6th Cir. Nov. 6, 2000) ("[T]he Shelby County Jail is not an entity subject to suit

under § 1983.") (citing *Rhodes v. McDaniel*, 945 F.2d 117, 120 (6th Cir. 1991)); *Howell v.

Hamilton Cty. Justice Ctr.*, No. 1:15-cv-303, 2015 WL 2406082, at *3 (S.D. Ohio May 20, 2015)

(Report and Recommendation) (finding county jail is not a "person" that can be sued under §

1983), *adopted*, 2015 WL 3852912 (S.D. Ohio June 22, 2015).   Therefore, the complaint against

the Franklin County Correctional Center, II should be dismissed.

The complaint against "John or Jane Doe (OWNER(S) of Jackson Pike Correction Center

II" should also be dismissed.   As best the Court can discern, it appears plaintiff seeks to hold the

owners of the correctional center liable for the actions of individual guards – who are not named

as defendants – who allegedly denied plaintiff medical care, subjected her to unconstitutional

conditions of confinement, and punished her for wearing a hijab.   Plaintiff's claims against the

"owners" of the jail should be dismissed to the extent plaintiff seeks to sue these individuals

under a *respondeat superior* theory.   It is well-settled that the doctrine of *respondeat superior*

does not apply in § 1983 lawsuits to impute liability onto supervisory personnel.   *See, e.g.,

Wingo v. Tennessee Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) (citing *Polk Cnty. v.

Dodson*, 454 U.S. 312, 325 (1981)).   "In order to find supervisory personnel liable, a plaintiff

must allege that the supervisors were somehow personally involved in the unconstitutional

activity of a subordinate, . . . or at least acquiesced in the alleged unconstitutional activity of a

subordinate." *Id.* (citing *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *see also Colvin v. Caruso*, 605 F.3d 282, 292 (6th Cir. 2010) (quoting *Cardinal v. Metrish*, 564 F.3d 794, 803 (6th Cir. 2009)) (to succeed on claim against supervisory state prison officials, the plaintiff must show the officials "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending officers"). Plaintiff has not alleged facts showing that the owners of the jail were individually involved in the alleged violations of plaintiff's rights or acquiesced in such actions. Therefore, plaintiff's claims should be dismissed against the "owners" of the jail to the extent plaintiff seeks to hold them liable under a *respondeat superior* theory.

Accordingly, in sum, plaintiff may proceed at this juncture with her claims against the Franklin County Sheriff in his official capacity. However, for the above-stated reasons, plaintiff's remaining claims should be dismissed. *See* 28 U.S.C. § 1915(e)(2)(B).

## IT IS THEREFORE RECOMMENDED THAT:

1. The complaint be **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B), **with the exception of** plaintiff's claims against the Franklin County Sheriff in his official capacity.

## IT IS THEREFORE ORDERED THAT:

1. The United States Marshal shall serve a copy of the complaint, summons, the Order granting plaintiff *in forma pauperis* status, and this Order and Report and Recommendation upon defendant the Franklin County Sheriff as directed by plaintiff, with costs of service to be advanced by the United States.

2. Plaintiff shall serve upon defendant or, if appearance has been entered by counsel,

upon defendant's attorney(s), a copy of every further pleading or other document submitted for consideration by the Court.   Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date a true and correct copy of any document was mailed to defendant or defendant's counsel.   Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

     3.   Plaintiff shall inform the Court promptly of any changes in her address which may occur during the pendency of this lawsuit.

Date:   6/24/2022

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

TASHA CHAPMAN,                                    Case No. 2:22-cv-2524
     Plaintiff,

                                           Watson, J.
     vs                                       Litkovitz, M.J.

FRANKLIN COUNTY SHERIFF, *et al.*,
     Defendants.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), WITHIN 14 DAYS after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.    This period may be extended further by the Court on timely motion for an extension.    Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.    If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.    A party may respond to another party's objections WITHIN 14 DAYS after being served with a copy thereof.    Failure to make objections in accordance with this procedure may forfeit rights on appeal.    *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).