### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

TASHA CHAPMAN,
       Plaintiff,

    vs.

FRANKLIN COUNTY SHERIFF, *et al.*,
       Defendants.

Case No. 2:22-cv-2524

Watson, J.
Litkovitz, M.J.

**SUPPLEMENTAL REPORT
AND RECOMMENDATION**

On July 13, 2022, the District Judge adopted, in part, the undersigned's Report and Recommendation and recommitted the matter to the Magistrate Judge for specific consideration of whether plaintiff has plausibly alleged claims against the Franklin County Sheriff under the eight causes of action alleged in the complaint. (Doc. 6).

### A.    Legal Standard

In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez,* 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 324 (1989)). To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if they are satisfied that the action is frivolous or malicious. *Id.*; *see also* 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams,* 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke,* 490 U.S. at 327. An action has no arguable factual basis when the allegations

are delusional or rise to the level of the irrational or "wholly incredible." *Denton,* 504 U.S. at 32; *Lawler,* 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915 (e)(2)(B)(ii) and 1915A(b)(1). A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). By the same token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470-71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or

2

"a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

### B.    Plaintiff's Complaint

Plaintiff, an adherent to the Muslim faith, brings claims arising out of her pretrial detention at the Franklin County Correctional Center II (also known as the Jackson Pike Correction Center II or JPCC II). Plaintiff alleges that on March 25, 2022, she was arrested and taken to Jackson Pike Correction Center II on a charge of vandalism. When plaintiff was checked in as an inmate, she was told that hijabs (religious head wraps) were not allowed and that she would have to be stripped of her hijab. Plaintiff alleges she suffers from Bipolar Disorder II, and experienced shock and fear at learning this. As a result, she began to have a panic attack and anxiety. Plaintiff was advised by numerous guards that the wearing of a hijab was prohibited. She was given a temporary accommodation and permitted to use a bedsheet as a head covering. However, a guard subsequently advised plaintiff that she had to remove the hijab for booking. Fearing punishment for exercising her religious beliefs, plaintiff complied.

When she arrived at the booking area, another guard advised her that "hijabs were not allowed at JPCC" and that it was a mistake to previously give plaintiff a bedsheet to wear. Plaintiff asked to speak to Sgt. Nealy, who advised her that "Muslim women could not observe their hijab at JPCC." (Doc. 3 at PAGEID 41). Sgt. Neely advised plaintiff she could only wear a hijab in her bed area by using a sheet or towel. Sgt. Nealy then "quoted some fake

law" in support of the hijab ban. Plaintiff was wearing the makeshift hijab when Nealy ordered her to remove it. Plaintiff refused, and the hijab was physically removed from plaintiff by a female and male guard.

Plaintiff was then escorted to her housing unit without her hijab in front of "everybody." (Doc. 3 at PAGEID 41). Once she arrived at the unit, plaintiff attempted to use her shirt, which was pulled up over her head, as a head covering. One guard advised the inmates in the holding cell that no one could leave the cell until plaintiff removed her head covering. She was later transported to her permanent holding cell.

Plaintiff was housed with 15 other women in her holding cell. She was forced to use her bedsheet as a hijab, which meant she had no sheet to cover the dirty mattress. Plaintiff then requested medication from a female guard, who advised plaintiff she could not use her sheet as a hijab and had to remove it before going to the TV or eating area. Plaintiff advised the guard she would not remove her head covering, and the guard closed the door without responding to plaintiff's request for medication.

Another guard advised plaintiff that she would need to get permission from the jail chaplain to wear a hijab. Plaintiff requested to speak to the chaplain but was denied.

Plaintiff alleges a guard retaliated against the entire housing unit when plaintiff refused to remove her hijab by cutting off the phones and television for all 15 inmates in the unit. Plaintiff alleges she was placed overnight in a dorm with women who were drug addicts and detoxing. She alleges there were food trays and used feminine hygiene products on the floor, and she was placed in that unit as punishment for wearing a hijab and for practicing her religion.

4

She was then moved to another unit and harassed daily by the guards about her hijab. She alleges the guards continued to threaten her and the other inmates if plaintiff continued to wear her sheet as a head covering, which caused discontent among the other inmates.

The complaint alleges that on March 27 and April 1, 2022, plaintiff observed Christian women being taken out of the unit for religious services.

Plaintiff alleges she was denied medical and mental health treatment for her Bipolar Disorder II for the seven days she was incarcerated. One guard gave her a form to seek medical attention but no pen to complete the form. She obtained a pen from another inmate and placed her mental health request at the door. However, she did not receive any mental health treatment.

Plaintiff alleges that on April 1, 2022, she was repeatedly advised by different guards that she would not be permitted to wear a hijab to her court hearing. She feared she would be charged with another crime if she wore a head covering to court, so she did not wear a hijab to court. Plaintiff alleges she "was paraded in front of about 30 male inmates and about 8 male guards in court without my hijab. I was certainly mortified and humiliated." (*Id.* at PAGEID 44) (emphasis omitted).

Plaintiff also alleges:

JPCC also violated my free practice of religion specifically by hiring male guards specifically to work at JPCC in the women's dorm and night when women take off their clothes to sleep. Specifically on the night of March 30th, 2022 and morning of March 31, 2022 guards 9, 10 and 11 were male officers (white and black) who worked the shift and who specifically came into the women's dormitory area while women w[]ere undressed, perhaps using the toilet and sleeping without their day clothing and or in their underwear. Since [I] was unable to sleep I was sitting up in the day room. At one point these male guards came in twice in a 10 minute period to do a count.

(*Id*. at PAGEID 45) (emphasis omitted).

Plaintiff was released on her own recognizance after her April 1, 2022 court hearing and given back her hijab.

Plaintiff alleges violations of (1) her right to the "free practice of my religion" under the First Amendment to the United States Constitution (First Cause of Action); (2) her right to the "free practice of my religion" under the equal protection clause of the Fourteenth Amendment (Second Cause of Action); (3) her right to be free from cruel and unusual punishment under the Eighth Amendment (Third Cause of Action); (4) her right to "free practice of religion" under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a) (Fifth Cause of Action); (5) Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601 *et seq*., and 42 U.S.C. § 3631 for housing discrimination (Sixth and Ninth Causes of Action); (6) state-law by inflicting upon her intentional infliction of emotional distress (Seventh Cause of Action); and (7) Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132, for not allowing her to participate in adequate mental health care (Eighth Cause of Action).   (*Id*. at PAGEID 45-46).   Plaintiff seeks $50,000,000.00 as relief.

### C. Resolution

#### 1. Official capacity claim

Plaintiff's complaint does not specify whether she is suing the Franklin County Sheriff in his individual and/or official capacity.   The Court must assume that the Sheriff is being sued in his official capacity unless the complaint provides notice of suit in an individual capacity.   *See Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001) (en banc).   Because plaintiff has not affirmatively pled capacity in her complaint, the Court looks to the course of proceedings to

determine whether the Sheriff has notice of an individual capacity suit.  *Id*. at 773.   In examining the course of proceedings, the Court "considers such factors as the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims of qualified immunity, to determine whether the defendant had actual knowledge of the potential for individual liability."  *Id.* at 772 n.1.   The Sixth Circuit in *Moore* determined the government official was put on notice he was sued in his individual capacity under the following circumstances:

> The caption on Moore's complaint lists only the officers' names, not their official titles.   The complaint refers to the officers throughout as the "individual defendants."   Paragraph Eleven of the complaint states, "The said officers, acting *for themselves and* for the City," behaved "with malice . . . and violated the plaintiff's civil rights."  (emphasis added).   Finally, Moore sought compensatory and punitive damages against "each of the defendants."   Taken as a whole, the complaint likely provided sufficient notice to the officers that they were being sued as individuals.

*Id.* at 773.

Here, in contrast, the caption of the complaint lists the official title of the Sheriff of Franklin County and not his individual name.   The body of the complaint does not allege any language indicating an individual-capacity claim against the Sheriff.   Rather, the complaint alleges that rules prohibiting the wearing of a hijab were enforced by corrections staff and others. The complaint simply requests damages in general and not specifically punitive damages.   The Franklin County Sheriff did not receive notice from the complaint that he was being sued in his individual capacity.   Therefore, the Court concludes that the Sheriff is sued in his official capacity.

An official capacity suit is generally "only another way of pleading an action against an entity of which an officer is an agent."  *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Kentucky*

*v. Graham*, 473 U.S. 159, 165 (1985)).   Thus, the official-capacity claims against the Franklin

County Sheriff are equivalent to claims against Franklin County.   *Powers v. County of Lorain,*

259 F. App'x 818, 822 n.2 (6th Cir. 2008) (citing *Leach v. Shelby County Sheriff*, 891 F.2d 1241,

1245 (6th Cir. 1989)).   Because the real party in interest in an official-capacity suit is the

governmental entity and not the named official, "the entity's 'policy or custom' must have

played a part in the violation of federal law."   *Hafer*, 502 U.S. at 25 (citing *Kentucky v. Graham*,

473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658,

694 (1978)).   In addition to identifying "conduct properly attributable to the municipality" itself,

the plaintiff "must also demonstrate that, through its *deliberate* conduct, the municipality was the

moving force behind the injury alleged."   *Cherrington v. Skeeter,* 344 F.3d 631, 645 (6th Cir.

2003) (quoting *Bd. of County Com'rs of Bryan County, Okl. v. Brown,* 520 U.S. 397, 404

(1997)).   With this background, the Court proceeds to address plaintiff's specific claims.

### 1.  Plaintiff's First Amendment Claim

"The Free Exercise Clause of the First Amendment, applicable to the States under the

Fourteenth Amendment, provides that 'Congress shall make no law. . . prohibiting the free

exercise' of religion."   *Fulton v. City of Philadelphia, Penn.*, 141 S.Ct. 1868, 1876 (2021).

"Prisoners retain the First Amendment right to the free exercise of their religion," *Hayes v.*

*Tennessee*, 424 F. App'x 546, 549 (6th Cir. 2011) (citing *Walker v. Mintzes*, 771 F.2d 920, 929

(6th Cir. 1985)), and "must be provided 'reasonable opportunities' to exercise their religious

freedom guaranteed under the First Amendment."   *Hudson v. Palmer,* 468 U.S. 517, 523 (1984)

(quoting *Cruz v. Beto*, 405 U.S. 319 (1972) (per curiam)).   "A prisoner alleging that the actions

of prison officials violate his religious beliefs must show that the belief or practice asserted is

religious in the person's own scheme of things and is sincerely held." *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (internal quotation marks and citation omitted). Though prisoners retain a First Amendment right to the free exercise of their religion, "the circumstances of prison life may require some restrictions on prisoners' exercise of their religious beliefs, requiring a court to balance the prisoners' constitutionally protected interest in the free exercise of their religious beliefs against the state's legitimate interests in operating its prisons." *Hayes*, 424 F. App'x at 549 (internal quotation marks and citation omitted). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

In this case, plaintiff has stated a plausible First Amendment free exercise claim against the Franklin County Sheriff. Plaintiff has alleged facts indicating her sincerely held religious belief in wearing a hijab in accordance with her Muslim faith and her distress at having the hijab or sheet removed. The complaint, liberally construed, also alleges the existence of a policy or practice of denying Muslim inmates the right to practice their religion by prohibiting the wearing of a hijab in the Franklin County Correctional Center II, and that the Sheriff is responsible for such policy or practice. Under Ohio law, the Franklin County Sheriff is solely responsible for acting as the chief law enforcement officer (Ohio Rev. Code § 311.07), appointing and employing sheriff's deputies (*id.* at § 311.04), and operating the Franklin County Correctional Center II (*id.* at § 341.01)—the powers that give rise to the alleged First Amendment constitutional violation in this lawsuit. "By statute, the Sheriff is responsible for the day-to-day operations of the jail and as part of that responsibility the Sheriff promulgates rules for the jail." *Loggins v. Franklin Cnty., Ohio*, 218 F. App'x 466, 474 (6th Cir. 2007). Plaintiff was

9

repeatedly advised by intake personnel, guards, and a supervisory sergeant that the Franklin County Correctional Center II had rules against the wearing of a hijab.   Plaintiff's hijab was forcibly removed when she refused to remove the hijab herself, and thereafter she complied with the orders to remove her hijab for fear of being disciplined.   The rule or policy banning hijabs was the moving force behind the alleged constitutional violation.   At this juncture of the proceedings, and in the absence of any formal briefing by the parties, plaintiff's First Amendment claim should be permitted to proceed.

### 2.  Plaintiff's other claims

#### a.  Equal protection

Plaintiff's equal protection claim should be dismissed.   Plaintiff alleges that on two occasions, she observed Christian inmates being removed from the holding cell to attend religious services.   (Doc. 3 at PAGEID 44).   As best the Court can discern, plaintiff appears to allege that Christian women were permitted to practice their faith while plaintiff, a Muslim, was not.

The Fourteenth Amendment's Equal Protection Clause mandates that "all persons similarly situated should be treated alike."   *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).   In the section 1983 prison context, the Supreme Court has not required that each religious denomination receive "identical facilities or personnel," but rather that "reasonable opportunities . . . be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendment without fear of penalty."   *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972).

Plaintiff has failed to allege she was treated differently than similarly situated inmates.

10

She does not allege that she was denied the opportunity for religious services.   Rather, her allegations concern the wearing of a head covering in accordance with her religious beliefs. Plaintiff has not alleged that other inmates are permitted to wear head coverings while she is not. Plaintiff has not provided sufficient facts to plausibly state an equal protection claim.

### b.   Eighth Amendment

"[T]he Eighth Amendment does not apply to pretrial detainees like [plaintiff]."   *Greene v. Crawford Cty., Michigan*, 22 F.4th 593, 605 (6th Cir. 2022) (citing *Graham ex rel. Est. of Graham v. Cty. of Washtenaw*, 358 F.3d 377, 382 n.3 (6th Cir. 2004)).   Instead, the rights of pretrial detainees are protected under the Due Process Clause of the Fourteenth Amendment. U.S. CONST. amend. XIV, § 1; *Greene*, 22 F.4th at 605.   The Due Process Clause "provides similar if not greater protections than the Cruel and Unusual Punishments Clause" of the Eighth Amendment.   *Spencer v. Bouchard*, 449 F.3d 721, 727 (6th Cir. 2006), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 n.9 (2007) (citing *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 849-50 (1998) and *Bell v. Wolfish*, 441 U.S. 520, 545 (1979)).   To state a claim under either the Fourteenth or Eighth Amendment in this context, a plaintiff must allege (among other things) that an objectively "sufficiently serious" deprivation has occurred, "resulting in a denial of the 'minimal civilized measure of life's necessities.'" *Francis v. Altiere*, 491 F. App'x 539, 541 (6th Cir. 2012) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *Spencer*, 449 F.3d at 728.

Plaintiff alleges the conditions of the dormitory, in which she remained for one night, were unsanitary and that she was denied medical care.   Plaintiff's allegations concerning the conditions of the dormitory do not state a claim for relief because the temporary exposure to such

conditions does not rise to the level of a constitutional violations.   "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."   *Ivey v. Wilson,* 832 F.2d 950, 954 (6th Cir. 1987).   Rather, "[t]he Eighth Amendment is concerned only with 'deprivations of essential food, medical care, or sanitation,' or 'other conditions intolerable for prison confinement.'" *Richmond v. Settles,* 450 F. App'x 448, 455–56 (6th Cir. 2011) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 348 (1981)).   "Conditions-of-confinement cases are highly fact-specific, but one guiding principle is that the length of exposure to the conditions is often paramount." *Lamb v. Howe,* 677 F. App'x 204, 209 (6th Cir. 2017) (citing *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) ("In general, the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations of shelter, food, drinking water, and sanitation' may meet the standard despite a shorter duration.") (quotation omitted)).

Courts have found that a temporary exposure to unsanitary cell conditions does not meet the objective component of the Eighth Amendment.   *See Lamb v. Howe*, 677 F. App'x 204, 209-10 (6th Cir. 2017) (inmate's four-hour exposure to human waste due to flooded toilet water insufficient to state Eighth Amendment violation); *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (flooded cell and inoperable toilet were temporary inconveniences that did not violate Eighth Amendment); *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) (no Eighth Amendment violation where an inmate complained that he was exposed to raw sewage from an overflowed toilet in his cell for four days, but suffered no physical harm); *Barney v. Pulsipher*, 143 F.3d 1299, 1311 (10th Cir. 1998) (finding no Eighth Amendment violation where inmate

was confined for 48 hours in a filthy cell, with inadequate lighting and ventilation, and unappetizing food); *Whitnack v. Douglas County*, 16 F.3d 954, 958 (8th Cir. 1994) (deplorably filthy and patently offensive cell with excrement and vomit not unconstitutional because conditions lasted only for 24 hours); *Wiley v. Kentucky Dep't of Corr.*, No. Civ. 11-97, 2012 WL 5878678, at *5-6 (E.D. Ky. Nov. 21, 2012) (inmate's "alleged exposure to the overflowing toilet and resulting odors, while no doubt unpleasant, was of short duration—one day—and did not amount to an Eighth Amendment violation").

Here, plaintiff alleges she was subjected to the unsanitary conditions of the dormitory for one night.   Similar to the inmates who suffered only a temporary exposure to unsanitary conditions cited above, plaintiff's exposure was temporary and was not sufficiently serious to meet the objective component of the Eighth Amendment.   This claim should be dismissed.

While the deprivation of medical care may rise to the level of a constitutional violation, *see Farmer*, 511 U.S. 825, plaintiff does not allege that the Sheriff personally participated in or was even aware of any such denial of medical care.   It is well-settled that the doctrine of *respondeat superior* does not apply in § 1983 lawsuits to impute liability onto supervisory personnel, like the Sheriff.   *See, e.g.*, *Wingo v. Tennessee Dep't of Corr.,* 499 F. App'x 453, 455 (6th Cir. 2012) (citing *Polk Cty. v. Dodson,* 454 U.S. 312, 325 (1981)).   "In order to find supervisory personnel liable, a plaintiff must allege that the supervisors were somehow personally involved in the unconstitutional activity of a subordinate, . . . or at least acquiesced in the alleged unconstitutional activity of a subordinate."   *Id.* (citing *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982); *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984)); *see also Colvin v. Caruso,* 605 F.3d 282, 292 (6th Cir. 2010) (quoting *Cardinal v. Metrish*, 564 F.3d 794, 803

13

(6th Cir. 2009)) (to succeed on claim against supervisory state prison officials, the plaintiff must show the officials "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending officers").   Plaintiff fails to allege facts indicating the Sheriff participated in or was notified of the alleged denial of medical care.   Therefore, plaintiff's claims that she was denied medical treatment should be dismissed against the Sheriff to the extent she seeks to hold liable under a *respondeat superior* theory.

Moreover, plaintiff has not alleged that such deprivations or denials resulted from any rule, policy, or custom of the Sheriff or Franklin County so as to hold the Sheriff liable in his official capacity.   *See Hafer*, 502 U.S. at 25.   Therefore, plaintiff's due process claims under the Fourteenth Amendment (characterized as Eighth Amendment claims) should be dismissed.

### c.  RLUIPA

Plaintiff's RLUIPA claim against the Sheriff should be dismissed.   Plaintiff seeks monetary damages only against the Sheriff.   Because there is no cause of action for money damages under RLUIPA, this claim against the Sheriff should be dismissed.   *See Pleasant-Bey v. Shelby Cnty.*, No. 18-6063, 2019 WL 11769343, at *3 (6th Cir. Nov. 7, 2019) (RLUIPA "simply does not permit claims for monetary damages") (citing *Sossamon v. Texas*, 563 U.S. 277, 288 (2011); *Haight v. Thompson*, 763 F.3d 554, 567–70 (6th Cir. 2014)).

### d.  Housing discrimination claims

Plaintiff brings a claim under the Fair Housing Act (FHA), 42 U.S.C. § 3601 *et seq*. (Title VIII of the Civil Rights Act of 1968), alleging she was denied the ability "to participate in safe housing while at JPCC because of [her] religion."   (Doc. 3 at PAGEID 46).   Among other things, the FHA prohibits discrimination in the sale or rental of housing on the basis of race,

14

color, religion, sex, familial status, national origin, or handicap. *See* 42 U.S.C. § 3604. Plaintiff has failed to allege any facts plausibly showing she qualifies for protection under the FHA under the circumstances alleged. This claim should be dismissed.

Plaintiff's claim under 42 U.S.C. § 3631 should also be dismissed. Section 3631, which is part of the FHA, is a criminal statute under which there is no private cause of action. *See McZeal v. Ocwen Fin. Corp.*, 252 F.3d 1355 (5th Cir. 2001); *see also M.F. ex rel. Branson v. Malott*, No. 1:11-cv-807, 2012 WL 1950274, at *7 (S.D. Ohio May 30, 2012), *report and recommendation adopted,* 2012 WL 3527176 (S.D. Ohio Aug. 15, 2012) (and cases cited therein).

### e. Intentional infliction of emotional distress

Plaintiff's state law claim against the Franklin County Sheriff for intentional infliction of emotional distress should be dismissed. As indicated above, the Sheriff is sued in his official capacity, meaning the claim is actually against Franklin County. "Ohio courts routinely have recognized that political subdivisions cannot be liable for intentional torts." *H.M. v. Bd. of Educ. of the Kings Loc. Sch. Dist.*, 117 F. Supp. 3d 992, 1013 (S.D. Ohio 2015) (citing *Wilson v. Stark County Dep't of Human Servs.,* 639 N.E.2d 105, 107 (Ohio 1994); *see also Santino v. Columbus Pub. Schs.,* 833 F. Supp. 2d 780, 800 (S.D. Ohio 2011) ("[T]here are no exceptions to immunity under [Ohio Rev. Code] § 2744.02(A)(1) for the intentional tort of intentional infliction of emotional distress."); *Price v. Austintown Local Sch. Dist. Bd. of Educ.,* 897 N.E.2d 700, 704 (Ohio Ct. App. 2008) ("[P]olitical subdivisions are immune from liability from intentional tort claims.")). Accordingly, plaintiff's intentional infliction of emotional distress claim in Count Seven should be dismissed.

### f. Americans With Disabilities Act

Plaintiff alleges a claim under Title II of the American with Disabilities Act for the alleged "refusal to allow [her] to participate in adequate mental health care with other inmates who were not Muslim." (Doc. 3 at PAGEID 46). Plaintiff has not stated a cognizable claim for relief under the ADA. To allege disability discrimination under Title II of the ADA, plaintiff must allege that: (1) she has a disability; (2) she is otherwise qualified for the benefit in question; and (3) she was excluded from the benefit due to discrimination because of her disability. *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015).

Here, plaintiff has not alleged that she was discriminated against or otherwise denied adequate medical care on the basis of a disability. Rather, she claim the alleged denial was based on her religion. Moreover, a prisoner does not state a claim for relief under the ADA for the denial of medical treatment where the claim was merely an Eighth Amendment deliberate indifference claim in another statutory guise. *See Hemphill v. ODRC*, No. 1:18-cv-497, 2018 WL 5928197, at *2 (S.D. Ohio Oct. 15, 2018), *report and recommendation adopted sub nom. Hemphill v. Ohio ODRC*, 2018 WL 5927026 (S.D. Ohio Nov. 13, 2018) (citing *Watson v. Mohr*, 2:17-cv-457, 2017 WL 6383812, at *5 (S.D. Ohio Dec. 14, 2017) ("[n]either medical treatment decisions nor medical malpractice . . . may form the basis of a claim under the ADA"), *report and recommendation adopted*, 2018 WL 836484 (S.D. Ohio Feb. 13, 2018). *See also Simmons v. Navajo Cty.*, 609 F.3d 1011, 1022 (9th Cir. 2010) ("The ADA prohibits discrimination because of disability, not inadequate treatment for disability."), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("[T]he Act would not be violated by a prison's simply failing to attend to the

16

medical needs of its disabled prisoners. . . .   The ADA does not create a remedy for medical
malpractice.").   In the absence of any allegation that plaintiff was discriminated against on the
basis of a disability, her complaint fails to state a claim upon which relief may be granted under
the ADA.

**D.   Conclusion**

Plaintiff should be permitted to proceed at this juncture with her First Amendment claim
against the Franklin County Sheriff in his official capacity.   However, for the above-stated
reasons, plaintiff's remaining claims against the Sheriff should be dismissed.   *See* 28 U.S.C.
§ 1915(e)(2)(B).

**IT IS THEREFORE RECOMMENDED THAT:**

1.   The complaint be **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B), **with
the exception of** plaintiff's First Amendment claim against the Franklin County Sheriff in his
official capacity.

Date:  7/22/2022

Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

TASHA CHAPMAN,                                              Case No. 2:22-cv-2524
       Plaintiff,

                                    Watson, J.
       vs                                                       Litkovitz, M.J.

FRANKLIN COUNTY SHERIFF, *et al.*,
       Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), WITHIN 14 DAYS after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.    This period may be extended further by the Court on timely motion for an extension.   Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.   If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.   A party may respond to another party's objections WITHIN 14 DAYS after being served with a copy thereof.   Failure to make objections in accordance with this procedure may forfeit rights on appeal.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).